IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH FRANCOMANO,

     Plaintiff,

vs.                                                    Civ. No. 03-1211 JP/RHS

THE UNIVERSITY OF NEW MEXICO,
and VIVIAN LAVALLEY, in both her
Official and Individual Capacity,

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

On May 14, 2004, the Defendants filed Defendants' Motion to Dismiss or for Summary

Judgment (Doc. No. 12).  Having fully considered the briefs, Plaintiff's Supplemental Statement

of Disputed Facts (Doc. No. 33), and the relevant law, the Court finds that the Defendants'

Motion to Dismiss or for Summary Judgment should be granted.

A.  Background

     This is an employment lawsuit arising from the Defendants' decision not to rehire the

Plaintiff, an Anglo male, after the reorganization of Career Works, a special project of the

University of New Mexico's (UNM) Division of Continuing Education and Community Services.

The Plaintiff is suing both UNM and his former Career Works supervisor, Vivian LaValley.

Plaintiff alleges in Counts I and II that Defendant UNM and Defendant LaValley in her individual

and official capacities discriminated against him based on race and gender in violation of Title VII.

Plaintiff alleges in Count III that Defendant UNM and Defendant LaValley in her individual and

official capacities violated the equal protection clause of the Fourteenth Amendment of the United

States Constitution.  Plaintiff, however, indicates in his first amended response brief that he is not

going to pursue the Fourteenth Amendment claim against Defendant LaValley in her official

capacity.  In Count IV, Plaintiff alleges that Defendant LaValley in her individual and official

capacities deprived the Plaintiff of his due process, equal protection, and Title VII rights in

contravention of 42 U.S.C. §1983.  Plaintiff also indicates in his first amended response brief that

he is no longer going to assert a §1983 claim against Defendant LaValley in her official capacity.

Plaintiff alleges in Counts V and VI, respectively, that Defendant UNM breached its employment

contract with Plaintiff and breached the implied covenant of good faith and fair dealing.  Finally,

Plaintiff alleges in Count VII that Defendant UNM wrongfully retaliated against Plaintiff when it

terminated the Plaintiff's employment.  Plaintiff seeks compensatory damages and punitive

damages.

  The following are undisputed material facts unless otherwise noted.  Employees of Career

Works are term employees with one year term appointments that are dependent upon the annual

renewal of contract funding.[1]  "The funding cycle is July 1 to June 30 of each year and the

appointments end when funding ends."  Affidavit of Vivian LaValley at ¶3, Ex. A (attached to

Defendants' Memorandum in Support [sic] Motion to Dismiss or for Summary Judgment (Doc.

No. 13), filed May 14, 2003).  Under the University Business Policies and Procedures Manual

3200, ¶3.3, term employees are not given layoff status when their term appointments end and

"[e]mployees hired for a term appointment will be separated from the University as of the

specified date unless the supervisor notifies the employee that the appointment will be extended."

Ex. 1 (attached to Affidavit of Vivian LaValley).  Moreover, term employees do not have "the

---

[1]Plaintiff claims in his second affidavit that the contract he was hired under in January
2001 was a five year contract which in January 2001 had two years left before expiring.  Plaintiff
does not provide documentation to support this claim.

right to grieve separation at the end of the appointment." *Id*. Post-probationary term employees, however, can only be discharged during the term appointment for proper cause. University Business Policies and Procedures Manual 3215, ¶2.3.1 (as quoted in Defendants' Memorandum in Support [sic] Motion to Dismiss or for Summary Judgment at 16).

In the fiscal year 2003 ending June 30, 2003, Career Works lost 36.6% of its funding and had new contract requirements to fulfill. Consequently, Career Works needed to be restructured to accommodate the lost funding and new contract requirements. Defendant LaValley allowed the term appointments to expire on June 30, 2002 and permitted the term employees to apply for newly created positions. Ultimately, the entire Career Works staff was reduced from seventy-four positions to thirty-seven positions. Prior to the restructuring, Career Works had eleven client service managers, eight job placement specialists, seventeen instructors, and four job developers. After the restructuring, Career Works had eleven career development specialists and two job developers. The career development specialist position was a newly created job classification which consolidated the functions of the client service manager, job placement specialist, and job instructor.

Prior to the reorganization of Career Works, Defendant LaValley informed her employees at a meeting that once Career Works was reorganized staff would have to make home visits with the clients. The Plaintiff and two other males objected to the home visits, raising safety and liability concerns. Defendant LaValley allegedly reacted hostilely towards Plaintiff's objection and thereafter treated Plaintiff in a hostile manner. Moreover, according to the Plaintiff, Defendant LaValley reassured her staff several times that their employment would be secure after June 30, 2003 because seniority was going to be a deciding factor in the rehires.

3

On May 23, 2002, Defendant LaValley met with several persons from UNM employment, human resources, employee relations, and compensation offices about the new job position of career development specialist.  It was noted in the written minutes of this meeting that everyone in Career Works would have their term appointments terminated on June 30, 2003.  The following also appears in the minutes:  "[s]eniority will be part of the termination decision," "[h]iring back on seniority within classification based UNM experience," and "[s]eniority around a continued position [sic] it applies."  Ex. A1 (attached to Plaintiff's First Amended Response to Defendants' Motion to Dismiss and for Summary Judgment (Doc. No. 21), filed June 24, 2004).  The minutes reflect that these terminations would not be lay offs and that there was no guarantee that these employees would get another job at UNM although "[p]references and weight will be done for rehire."  *Id*.  Any rehires would be based upon the competitive process and qualifications of the applicants.  *Id*.  In regard to hiring an employee, University Business Policies and Procedures Manual 3210, ¶4.3, states the following with respect to seniority:  "when qualifications, abilities, and past performance of candidates are substantially equal as determined by the hiring officer:  ... seniority in UNM employment shall be given weight when there are two (2) or more UNM employees."

Fifty-one persons applied for the eleven career development specialists positions, twenty-seven of whom were former Career Works employees.  Defendant LaValley, two Hispanic females, and two Hispanic males comprised the search committee to fill the newly created positions.  Thirty-four applicants were asked to interview, including the Plaintiff.  The search committee, as a group, conducted the interviews and each committee member scored each applicant according to certain relevant criteria.  After putting the scores on a tally sheet, the

search committee offered the eleven highest ranking candidates a position. The eleven selected applicants included five Hispanic females, one Hispanic male, two Anglo males, and three Anglo females. Plaintiff ranked 18th or 19th and so was not offered a job. "Plaintiff was not selected because he did not show the necessary experience in individual plan coordination, training, business relations, or data reporting as compared to the other candidates." Affidavit of Vivian LaValley at ¶12. Shortly after the eleven positions for career development specialist were filled, the Defendants posted a job announcement for a career development specialist when one of the original eleven positions subsequently became vacant.

The Plaintiff contends that the search committee did not seem very interested in interviewing him. The interview lasted only about fifteen minutes. The Plaintiff claims that Defendant LaValley rehired former Career Works employees Michelle Renteria and Marisa Castaneda, Hispanic females, for the positions of career development specialist based on favoritism and preferential treatment. Plaintiff notes that he was involved in hiring Ms. Renteria and Ms. Castaneda when they were first hired at Career Works and that he participated in training them. Plaintiff alleges that he had more seniority and experience than Ms. Renteria and Ms. Castaneda. Moreover, Plaintiff contends that Defendant LaValley's "favorites" knew before any other Career Works employees that they would be rehired.

B. Standards of Review

    1. Summary Judgment

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the

light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of the non-movant's pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

  2.  Failure to State a Claim

  In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must liberally construe the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).  The Court may dismiss the complaint if it appears to a certainty that the plaintiff can prove no set of facts in support of the plaintiff's claim which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

C.  Discussion[2]

    1. Count III:  the Fourteenth Amendment Claim Against Defendant UNM and Defendant LaValley in her Individual Capacity

        a.  Eleventh Amendment Immunity for Defendant UNM

    The Defendants argue first that Count III should be dismissed as to Defendant UNM on the basis of Eleventh Amendment immunity.[3]  With two narrow exceptions, the Eleventh Amendment bars a lawsuit in federal court by a citizen against a state agency.  *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), *cert. denied*, 525 U.S. 1122 (1999)(citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  The two narrow exceptions to Eleventh Amendment sovereign immunity are as follows:  "1)  A state may waive its Eleventh Amendment immunity by consenting to be sued, but only in the clearest and most unmistakable terms, and 2) Congress may abrogate the states' Eleventh Amendment immunity, but again, only by using the clearest and most unmistakable terms, and only when Congress is exercising a power granted to it by a constitutional amendment post-dating the Eleventh Amendment, i.e., principally section 5 of the Fourteenth Amendment."  *Id.* at 1187-88 (citing *Aaron v. State of Kan.*, 115 F.3d 813, 814 (10th Cir. 1997)).

    In this case, Defendant UNM is an arm of the state for Eleventh Amendment immunity purposes.  *See Mascheroni v. Board of Regents of the University of California*, 28 F.3d 1554,

---

[2]The issues will be addressed in the order presented by the Defendants in their motion for summary judgment and dismissal.

[3]"A motion to dismiss based on immunity is treated as a [Fed. R. Civ. P.] 12(b)(1) motion to dismiss for lack of jurisdiction...."  *Meyers v. Colorado Dept. of Human Services*, 62 Fed. Appx. 831, 832 (10th Cir.), *cert. denied*, 540 U.S. 840 (2003)(citing *Tippetts v. United States*, 308 F.3d 1091, 1093-94 (10th Cir. 2002)).

1559 (10th Cir. 1994), *abrogated on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101(2002).  There is no evidence that the Defendant UNM has consented to be sued let alone clear and unmistakable consent to suit.  There is also no evidence that Congress in any terms abrogated Defendant UNM's Eleventh Amendment sovereign immunity.  Under these circumstances, the Court concludes that the Plaintiff's Fourteenth Amendment claim against Defendant UNM cannot be maintained in federal court.

> b.  Failure to State a Claim

Next, the Defendants argue that the Fourteenth Amendment alone does not create a cause of action.  The Defendants are correct.  The Plaintiff does not have a cause of action directly under the United States Constitution but rather must pursue any alleged constitutional violations under 42 U.S.C. §1983.  *See, e.g., Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir 1992), *cert. denied*, 506 U.S. 1081 (1993).  Consequently, Plaintiff has failed to state a cause of action under the Fourteenth Amendment in Count III.  Plaintiff, however, also raises the Fourteenth Amendment claim, this time properly, by bringing it under §1983 in Count IV.  Since the Plaintiff has availed himself of §1983 with respect to his Fourteenth Amendment claim, the Court will dismiss Count III with prejudice because it fails to state a valid claim, but will separately analyze Plaintiff's Fourteenth Amendment claim asserted in Count IV by way of §1983.

2. Count IV:  the §1983 Claim Against Defendant LaValley in her Individual Capacity

The Defendants argue that Defendant LaValley is entitled to qualified immunity with respect to Plaintiff's §1983 claim.[4]  Summary judgment motions involving a qualified immunity defense are determined somewhat differently than other summary judgment motions. *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995). "When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).   This is a heavy burden for the plaintiff.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)(citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)).  "'First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue.'"  *Nelson*, 207 F.3d at 1206 (quoting *Albright*, 51 F.3d at 1534-35). If, and only if, the plaintiff establishes both elements of the qualified immunity test does a defendant then bear the traditional burden of showing "'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'"  *Nelson*, 207 F.3d at 1206 (quoting *Albright*, 51 F.3d at 1535)).  In other words, although the court "review[s] the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise the defendants are entitled to

---

[4]Defendants also argue that Defendant LaValley has qualified immunity with regard to Plaintiff's Fourteenth Amendment claim alleged under Count III.  Having found that Plaintiff failed to state a Fourteenth Amendment claim against Defendant LaValley in Count III, I conclude that Defendant LaValley need not assert qualified immunity for a non-existent claim.  *See Hunt v. Smith*, 67 F.Supp.2d 675, 682 (E.D. Tex. 1999)(qualified immunity is an unnecessary defense when plaintiff has not sought the protection of §1983 by bringing a claim directly under the United States Constitution).

qualified immunity." *Cram*, 252 F.3d at 1128 (citation omitted).

The Defendants argue primarily that the elements of Plaintiff's §1983 claim are essentially the same as the elements of his Title VII claims.  The Defendants cite to *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991) which states:  "Cases establish that, in racial discrimination suits, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in McDonnell Douglas, whether that case is brought under §§1981 or 1983 or Title VII."  Accordingly, the Defendants argue that if Plaintiff's Title VII claims fail, his §1983 claims should fail as well thereby entitling Defendant LaValley to qualified immunity for the §1983 claims.   The Plaintiff responds to this argument by merely stating that "[g]iven the factual issues concerning Defendant LaValley's failure to follow University policies in hiring, it is premature to dismiss Plaintiff's claims on the basis of qualified immunity."  Plaintiff's First Amended Response to Defendants' Motion to Dismiss and for Summary Judgment (Doc. No. 21) at 5, filed June 24, 2004.  Given these arguments, the Court will analyze Plaintiff's Title VII claims, including a consideration of whether Defendant LaValley followed Defendant UNM's employment policies, before determining whether Defendant LaValley is entitled to qualified immunity on the §1983 claims.

  3.  Counts I and II:  the Title VII Claims Against Defendant UNM and Defendant LaValley in her Official and Individual Capacities

    a.  Title VII Claims Against Defendant LaValley in her Individual Capacity

The Defendants correctly contend that the Plaintiff cannot maintain a Title VII claim against Defendant LaValley in her individual capacity.  "'Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate.  The relief

granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act.'"  *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996)(quoting *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993)).  Consequently, the Title VII claims against Defendant LaValley in her individual capacity should be dismissed with prejudice.

> b.  Title VII Claims Against Defendant UNM and Defendant LaValley in her Official Capacity

Plaintiff is alleging that the Defendants discriminated against him by not rehiring him because he is an Anglo male.  This case, therefore, presents a reverse discrimination case.  A plaintiff alleging discrimination may prove intentional discrimination through either direct or indirect evidence of discrimination.  *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).  In the absence of direct evidence of discrimination, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U. S. 792, 802-05 (1973) must be applied to determine whether summary judgment is appropriate. The *McDonnell Douglas* framework consists of three burden-shifting steps.  Initially, the burden rests with the plaintiff to establish a *prima facie* case of discrimination.  *Id*. at 802.  If the plaintiff has established a *prima facie* case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its action.  *Id*.  Finally, if the defendant articulates a nondiscriminatory reason, the burden shifts back to the plaintiff to show the proffered reason is merely a pretext for discrimination.  *Id*. at 804.  Where the parties have satisfied their respective burdens under the *McDonnell Douglas* framework, summary judgment is ordinarily inappropriate. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

(1)  *Prima Facie* Case

The first step in the *McDonnell Douglas* analysis is to determine whether a plaintiff has established a *prima facie* case of discrimination. To do so in the context of a disparate-treatment claim, the plaintiff must ordinarily present evidence of the following: (1) the plaintiff is a member of a protected group, (2) the plaintiff applied and was qualified for a job for which the defendant was seeking applicants, (3) despite the plaintiff's qualifications the defendant rejected the plaintiff, and (4) following the plaintiff's rejection, the defendant continued to seek applicantions from persons with the plaintiff's qualifications. *McDonnell Douglas*, 411 U.S. at 802.  Different standards, however, apply to a reverse discrimination claim.  A reverse discrimination plaintiff must in lieu of showing that he belongs to a protected class, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority. *See Notari v. Denver Water Dept.*, 971 F.2d 585, 587 (10th Cir. 1992). Alternatively, "the plaintiff must allege and produce evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status, the challenged decision would not have occurred." *Id*.  "[I]t is not enough, under this alternative formulation, for a plaintiff merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision." *Id*.

In this case, the Plaintiff argues that there is evidence that background circumstances at UNM support an inference that Defendants belong to that group of unusual employers who discriminate against the majority.  Specifically, the Plaintiff notes that Defendant LaValley's preference for Hispanic females was shown when she hired Ms. Renteria and Ms. Castaneda for the new positions of career development specialist instead of hiring Plaintiff.  However, the

Plaintiff neglects to mention that the Career Works search committee consisting of men and women selected eleven applicants including five Hispanic females, one Hispanic male, two Anglo males, and three Anglo females.  This evidence fails to show that the Defendants were the unusual employers who discriminate against men or Anglos.  *See Romero v. City and County of Denver Dept. of Social Services*, 57 Fed. Appx. 835, 840 (10th Cir. 2003)(defendant was not the unusual employer who discriminates against males where two males participated in decision to disqualify male plaintiff from employment); *Babbar v. Ebadi,* 2000 WL 702428 **6 (10th Cir.)(the defendant was not the unusual employer who discriminates against males where another male was given tenure at the same time defendant denied male plaintiff tenure and five of seven tenured members in plaintiff's department were males including the department head).  Furthermore, the Plaintiff fails to argue, in the alternative, that specific facts support a reasonable inference that the Defendants would have rehired Plaintiff if he was not an Anglo male.  Instead, the Plaintiff goes on to argue that he has otherwise met the remaining *prima facie* elements.

Plaintiff emphasizes that although he was qualified for the new position of career development specialist, two of those positions were offered to Ms. Renteria and Ms. Castaneda, Hispanic females Plaintiff had trained and who Plaintiff believes were less qualified than himself. The fact that Plaintiff trained Ms. Renteria and Ms. Castaneda, however, does not mean that they are necessarily less experienced or less qualified than the Plaintiff.  Ms. Renteria and Ms. Castaneda may have gained other relevant experiences prior to working at Career Works. Plaintiff has not provided evidence other than his own unsupported statements that he was more highly qualified for the position of career development specialist than Ms. Renteria and Ms. Castaneda.  Interestingly, Plaintiff does not argue that the other nine successful candidates were

13

less qualified than himself, including three Hispanic females other than Ms. Renteria and Ms. Castaneda.  The Plaintiff simply has not established that a reasonable jury could find that he established a *prima facie* case of reverse discrimination under Title VII.

(2)  Defendants' Legitimate Reason for Not Rehiring Plaintiff

The Defendants contend that even if the Plaintiff had presented evidence of a *prima facie* case of reverse discrimination under Title VII, they had a legitimate nondiscriminatory reason for not rehiring Plaintiff.  Defendants have provided evidence that the Plaintiff was not rehired as a career development specialist because of the Plaintiff's scores on the various criteria the search committee used to choose successful applicants.  This evidence is sufficient for a reasonable jury to find that the Defendants have carried their burden of meeting step two of the *McDonnell-Douglas* analysis.

(3)  Pretext[5]

To overcome a motion for summary judgment when the plaintiff has successfully set forth a *prima facie* case of reverse discrimination and the defendant has offered a legitimate nondiscriminatory reason for the challenged employment action, "the plaintiff's burden is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief."  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1321 (10th Cir. 1997)(citing *Randle v. City of Aurora*, 69 F.3d 441, 452 (10th Cir. 1995)).  A plaintiff may establish pretext by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally

---

[5]Plaintiff did not address the issue of pretext in his first amended response brief but did raise some arguments regarding pretext at the December 2, 2004 pretrial conference.

14

find them unworthy of credence and hence infer that the employee did not act for the asserted

non-discriminatory reasons.'" *Id*. at 1323 (citation omitted). Other "[e]vidence of pretext may

include, but is not limited to . . . prior treatment of plaintiff; the employers policy and practice

regarding minority employment (including statistical data); disturbing procedural irregularities

(e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria." *Simms v.*

*Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1328

(10th Cir.), *cert. denied*, 528 U.S. 815 (1999)(citation omitted).   A plaintiff's "mere conjecture

that [his or her] employer's explanation is a pretext for intentional discrimination is an insufficient

basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772

(10th Cir. 1988), *abrogated in part on other grounds by Buchanan v. Sherill*, 51 F.3d 227 (10th

Cir. 1995).

   The Plaintiff apparently believes that pretext is evident because Defendants did not invite

him, specifically, to apply for a career development specialist position that became open again

after the original eleven career development specialist positions had been filled.  There is,

however, no evidence that this subsequent job vacancy was not properly posted according to

UNM policies and procedures, or that the Defendants had any kind of duty or policy to inform the

Plaintiff of the vacancy or to hire him for that position without his applying for the position.  In

fact, this job vacancy occurred because one of the original eleven successful applicants for the

position of career development specialist decided to leave the position soon after accepting the

position.  Plaintiff has failed to demonstrate a genuine dispute of material fact as to whether the

Defendants' proffered reason for not rehiring the Plaintiff was unworthy of belief.

(4)  Direct Evidence of Discrimination Under Title VII

The Plaintiff also alleges that there is direct evidence of reverse discrimination.  As evidence of this direct discrimination, the Plaintiff notes that all members of the search committee were Hispanic; Plaintiff's interview was short; Ms. Renteria and Ms. Castaneda were rehired while Plaintiff was not; and Plaintiff was not given notice of the position of career development specialist.   Direct evidence of discrimination "is '[e]vidence which, if believed, proves [the] existence of [a] fact in issue without inference or presumption.'"  *Shorter v. I C G Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999), *abrogated on other grounds by Desert Palace Inc. v. Costa*, 539 U.S. 90 (2003)(citation omitted).  Statements which require the trier of fact to infer that discrimination was a motivating cause of an employment decision are at most circumstantial evidence of discriminatory intent.  *See E.E.O.C. v. Wiltel, Inc.*, 81 F.3d 1508, 1514 (10th Cir. 1996); *see also Shorter*, 188 F.3d at 1207 ("statements of personal opinion, even when reflecting a personal bias or prejudice, do not constitute direct evidence of discrimination.").  Plaintiff's allegations of direct evidence of discrimination are really, at most, allegations of indirect or circumstantial evidence of discrimination.  Plaintiff has not presented evidence of direct discrimination.  In sum, Defendant UNM and Defendant LaValley in her official capacity are entitled to summary judgment on Plaintiff's Title VII claims.  That being so, Defendant LaValley in her individual capacity is entitled to qualified immunity on the Plaintiff's §1983 claims.  Counts I, II, and IV will be dismissed with prejudice.

4. Count V:  Breach of Employment Contract Against Defendant UNM

The Plaintiff alleges under Count V that Defendant UNM breached "Plaintiff's written, express and/or implied employment contract with Defendant UNM" by "subjecting him to

16

discrimination, harassment and hostility, by not using seniority as a significant factor in the rehiring process as previously stated by Defendant LaValley, and by not following its written and stated employment policies and procedures." ¶¶36 and 38 of Complaint.  First, Defendant UNM argues that under NMSA 1978, §37-1-23(A)(1976) any alleged oral representations by Defendant LaValley regarding seniority cannot be used as the basis for a breach of contract claim.  Section 37-1-23(A) states:  "Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."  Second, Defendant UNM argues that even if its written policies and procedures are construed as an implied written employment contract, Defendant UNM has not breached those written policies and procedures.  *See Garcia v. Middle Rio Grande Conservancy Dist.*, 121 N.M. 728, 1996-NMSC-029, ¶11 (employee handbooks and personnel policy guides may constitute implied employment contracts which are deemed "written" contracts for the purpose of applying §37-1-23(A)).

The Plaintiff argues that Defendant LaValley's oral promise to use seniority as a factor in the rehiring process was reflected in the written minutes of the May 23, 2002 meeting between Defendant LaValley and other UNM personnel, and in University Business Policies and Procedures Manual 3225, ¶5.1.2 and 3210, ¶4.3.[6]  Although employee policies and procedures like the University Business Policies and Procedures Manual may meet the written contract requirement under §37-1-23(A) to avoid immunity, oral promises normally do not.  "While parties may leave portions of written contracts to oral expression, under such circumstances oral expressions are legally significant *only if they are not contradictory* and have some effect upon

_____

[6]Viewing the evidence in the light most favorable to the Plaintiff, the Court will treat Plaintiff's reference to the minutes of the May 23, 2002 meeting as evidence of Defendant LaValley's oral promise that seniority would be a factor in the rehiring process.

interpretation, application and legal operation of the written portion." *Trujillo v. Gonzales*, 106 N.M. 620, 621, 747 P.2d 915, 916 (1987). Defendant LaValley's oral promise is not legally significant if it contradicts the University Business Policies and Procedures Manual's provisions on seniority. Therefore, the Court next will analyze the provisions of the University Business Policies and Procedures Manual on which Plaintiff relies.

Plaintiff cites to ¶5.1.2 of the University Business Policies and Procedures Manual which states that "[w]hen an organization has more than one individual employed under the position title being eliminated, selection of employees to be laid off generally will be based on seniority." This specific provision is under the general provision labeled "Layoff," ¶5. Clearly, ¶5.1.2 applies to laid off employees. Term appointment employees like the Plaintiff, however, "are not placed on layoff status at the end of the appointment" and do not have "the right to grieve separation at the end of the appointment." University Business Policies and Procedures Manual 3200, ¶3.3. Paragraph 5.1.2, therefore, does not apply to the Plaintiff.

Plaintiff also cites to ¶4.3 of the University Business Policies and Procedures Manual which states the following with respect to hiring a successful candidate: "when qualifications, abilities, and past performance of candidates are substantially equal as determined by the hiring officer: ... seniority in UNM employment shall be given weight when there are two (2) or more UNM employees." In this case, there is no evidence that the Plaintiff's qualifications, as reflected in the search committee's score assigned to Plaintiff, were equal to the qualifications of any of the applicants who received the top eleven scores. Consequently, ¶4.3 does not apply to the Plaintiff.

Plaintiff has not shown that Defendant LaValley's oral promise is consistent with the position of the University Business Policies and Procedures Manual on seniority.  I find that Defendant LaValley's oral promise regarding seniority clearly contradicts the University Business Policies and Procedures Manual.  Defendant LaValley's promise is, therefore, not legally significant in light of the University Business Policies and Procedures Manual.  Furthermore, considering Plaintiff's status as a term employee and Defendant UNM's policies and procedures regarding seniority, I conclude that no reasonable jury could find that Defendant UNM breached an implied written employment contract established by the University Business Policies and Procedures Manual by not rehiring Plaintiff.  Summary judgment is appropriate on this claim and Count V will be dismissed with prejudice.

    5.  Count VI:  Breach of Implied Covenant of Good Faith and Fair Dealing Claim Against Defendant UNM

Defendant UNM argues that the Plaintiff does not state a valid claim of a breach of the implied covenant of good faith and fair dealing by reason of Defendant UNM's termination of Plaintiff's employment.  *See* ¶42 of Complaint.  Defendant UNM notes that the New Mexico courts have yet to determine whether a claim for breach of the implied covenant of good faith and fair dealing can be pursued in light of §37-1-23(A).  *See Moriarty Mun. Schools v. New Mexico Public Schools Ins. Authority*, 131 N.M. 180, 2001-NMCA-096 ¶26.  Defendant UNM, however, believes that §37-1-23(A) would bar claims based on unwritten covenants like the implied covenant of good faith and fair dealing.  For the purpose of this discussion, the Court will rely on its previous conclusion that the University Business Policies and Procedures Manual constitutes an implied written employment contract which avoids the bar of claims under §37-1-23(A).

19

Defendant UNM nonetheless argues that if one construes the University Business Policies and Procedures Manual as an implied written employment contract, Defendant UNM did not breach any implied covenant of good faith and fair dealing. Defendant supports this argument by noting that (1) this case is similar to *Kropniak v. ARA Health Services, Inc.*, 131 N.M. 128, 2001-NMCA-81 wherein a plaintiff with a term employment contract did not have a valid claim for breach of the implied covenant of good faith and fair dealing, and (2) under University Business Policies and Procedures Manual 3215, ¶2.3.1 Plaintiff was not entitled to continued employment at the end of the term of his appointment.

In New Mexico, a cause of action for a breach of an implied covenant of good faith and fair dealing applies to employment contracts which are <u>not</u> at-will. *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 439, 872 P.2d 852, 857 (1994). An at-will employment contract is one where either the employee or employer can terminate the employment contract at any time without any reason. *Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 730, 749 P.2d 1105, 1109, *cert. denied*, 488 U.S. 822 (1988). To state a claim for breach of the implied covenant of good faith and fair dealing the plaintiff must present facts that show the defendant undercut the plaintiff's rights or benefits under the employment contract. *Kropniak*, 2001-NMCA-081 ¶5 (citation omitted). A cause of action for breach of an implied covenant of good faith and fair dealing will not apply to an employment contract "to override express provisions addressed by the terms of an integrated, written contract." *Id*. at 731, 749 P.2d at 1110. In fact, "'[c]ontractual provisions relating to termination or cancellation of an agreement not arrived at by fraud, or unconscionable conduct, will be enforced by law.'" *Id*. (quoting *Smith v. Price's Creameries, Div. of Creamland Dairies, Inc.*, 98 N.M. 541, 546, 650 P.2d 825, 830

(1982)).

The written employment contract in *Kropniak* was a term contract like the Plaintiff's contract in this case. However, unlike this case, the contract in *Kropniak* contained an at-will termination clause. Here, Defendant UNM could only terminate Plaintiff for proper cause during the term of his employment. *See* University Business Policies and Procedures Manual 3215, ¶2.3.1 ("Post-probationary employees hired on a term appointment may be suspended or discharged only for *proper cause*... during the term appointment.")(as quoted by Defendant UNM at 16 of Defendants' Memorandum in Support [sic] Motion to Dismiss or For Summary Judgment). Emphasis added. Consequently, *Kropniak* is distinguishable from this case.

To state a claim for breach of the implied covenant of good faith and fair dealing the Plaintiff must present facts that show Defendant UNM undercut his rights or benefits under the written employment contract, i.e., the University Business Policies and Procedures Manual. *Kropniak*, 2001-NMCA-081 ¶5 (citation omitted). In this case, the Plaintiff's employment was terminated at the expiration of his term appointment. This is in keeping with the University Business Policies and Procedures Manual. *See* University Business Policies and Procedures Manual 3200, 3.3 ("Employees hired for a term appointment will be separated from the University as of the specified date unless the supervisor notifies the employee that the appointment will be extended."). Plaintiff argues that Defendant LaValley's oral promise to use seniority as well as the written seniority provisions previously described support the claim of a breach of the implied covenant of good faith and fair dealing. As already noted, Defendant LaValley's oral promise contradicts the written seniority provisions and so are not legally significant. Moreover, a reasonable jury could not find that Defendant UNM undercut Plaintiff's rights or benefits under

the University Business Policies and Procedures Manual by allowing his term appointment to

expire as expressly provided in the University Business Policies and Procedures Manual.

Summary judgment is, therefore, appropriate on this claim and Count VI will be dismissed with

prejudice.

      6.  Count VII:  Wrongful Retaliatory Discharge Against Defendant UNM

      Defendant UNM claims that the New Mexico Tort Claims Act (NMTCA) bars Plaintiff's

wrongful retaliatory discharge claim.  Plaintiff alleges in Count VII that Defendant UNM

terminated his employment in violation public policy.  ¶46 of Complaint.  In New Mexico, a

discharged at-will employee can "recover in tort when his discharge contravenes a clear mandate

of public policy."  *Chavez v. Manville Products Corp.*, 108 N.M. 643, 647, 777 P.2d 371, 375

(1989)(citations omitted).  The tort of wrongful retaliatory discharge does not apply to an

employee who can be discharged only for cause.  As the New Mexico Court of Appeals states:

> a claim for retaliatory discharge is only available to at-will employees.  Retaliatory
> discharge was created as an exception to the doctrine of at-will employment to prevent
> terminations in violation of clear public policy.  When an employee is already protected
> from wrongful discharge by a contract, such as the requirement of just cause before
> termination, any claim of retaliatory discharge is 'unnecessary and inapplicable,' because
> essentially it would duplicate rights already adhering to the employee under contract.

*Barreras v. State of New Mexico Corrections Dept.*, 133 N.M. 313, 2003-NMCA-027 ¶22, *cert.*

*denied*, 133 N.M. 413, No. 27,855 (2003)(citations omitted).

      Assuming for the sake of argument that Plaintiff was an at-will employee, I find that

Plaintiff's claim of wrongful retaliatory discharge does not fall "within a recognized exception to

the immunity granted to public officers under the Tort Claims Act."  *Silva v. Town of Springer*,

121 N.M. 428, 1996-NMCA-022 ¶27, *cert. denied*, 121 N.M. 375,  No. 23,476 (1996) and 121

N.M. 444, No. 23,488 (1996).  Consequently, the NMTCA bars the claim of wrongful retaliatory

discharge.  Plaintiff, nevertheless, argues that NMSA 1978, §41-4-21 (1976) allows a wrongful

retaliatory discharge claim against public officers or entities.  Section 41-4-21 states that the

NMTCA "shall not affect the provisions of any personnel act, any rules or regulations issued

thereunder or any other provision of law governing the employer-employee relationship."

However, "Section 41-4-21 does not provide a waiver of immunity and, therefore, furnishes no

basis for suing defendant."  *Rubio by and through Rubio v. Carlsbad Mun. School Dist.*, 106

N.M. 446, 448, 744 P.2d 919, 921 (Ct. App. 1987).  "Read in context, [§41-4-21] simply means

that if a waiver of immunity exists that would entitle an injured party to bring a claim, the Tort

Claims Act shall not affect personnel acts, rules or regulations, or other provisions of law

governing the employer-employee relationship.  That section was designed to preserve

employment relations, not to provide a waiver of immunity."  *Id.* at 449, 744 P.2d at 922.

Plaintiff's reliance on §41-4-21 is, therefore, misplaced.  Accordingly, Count VII is subject to

dismissal with prejudice.

     IT IS ORDERED that:

     1.  Defendants' Motion to Dismiss or for Summary Judgment (Doc. No. 12) is granted;

and

     2.  all of Plaintiff's claims against Defendants UNM and LaValley will be dismissed with

prejudice.

_____

SENIOR UNITED STATES DISTRICT JUDGE